J-S17023-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES ALLEN HAMMAN, JR. | |
| Appellant | No. 1730 MDA 2019 |

Appeal from the Judgment of Sentence Entered February 6, 2018
In the Court of Common Pleas of Fulton County
Criminal Division at No: CP-29-CR-0000202-2016

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES ALLEN HAMMAN, JR. | |
| Appellant | No. 1731 MDA 2019 |

Appeal from the Judgment of Sentence Entered February 6, 2018
In the Court of Common Pleas of Fulton County
Criminal Division at No: CP-29-CR-0000206-2016

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES ALLEN HAMMAN, JR. | |
| Appellant | No. 1732 MDA 2019 |

Appeal from the Judgment of Sentence Entered February 6, 2018
In the Court of Common Pleas of Fulton County
Criminal Division at No: CP-29-CR-0000201-2016

BEFORE:  PANELLA, P.J., STABILE, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:                    **FILED AUGUST 25, 2020**

Appellant, James Allen Hamman, Jr., appeals his judgments of sentence totaling 21—75 years' imprisonment for three burglaries of unoccupied residences and related offenses.  We affirm Appellant's convictions, but find his maximum sentences on several convictions clearly unreasonable within the meaning of 42 Pa.C.S.A. § 9781(c).  Accordingly, we vacate Appellant's judgment of sentence and remand this case for resentencing.

These cases concern burglaries of three residences in the vicinity of Cowans Gap State Park in Fulton County.  The following evidence was presented during Appellant's jury trial.

**Mackey burglary.**  On October 11, 2016, Brian Mackey left his weekend home.  There was nothing amiss and he locked up carefully before leaving.  When he arrived back on October 15, 2016, he discovered that his home had been burglarized by intrusion through a window.  Several items were missing, including a table, four chairs and two Frigidaire dehumidifiers.  He immediately notified DCNR[1] Park Rangers, who in turn notified the Pennsylvania State Police.  N.T. 12/28/17, at 43-50.

---

[1] Pennsylvania Department of Conversation and Natural Resources.  The rangers identified below are all DCNR rangers.

On October 14, 2018, one day before Mackey discovered the break-in, Appellant and his girlfriend, Amanda Briggs, sold a table, four chairs and two dehumidifiers at Nick's Bargain and Variety, a second-hand store in Mifflintown. *Id.* at 140-144; Com. Ex. 29.

During the ensuing investigation, Mackey provided photographs of the stolen items to Ranger Eitner. On November 12, 2016, Ranger Eitner traveled to Nick's Bargain and Variety, because this business was known to purchase stolen property. He surreptitiously photographed the two dehumidifiers and shared those photos with Mackey for identification,[2] and he eventually obtained possession of the dehumidifiers with the help of the State Police. Mackey had the warranty information card for one of the dehumidifiers that included the unit's serial number. The serial number matched one of the dehumidifiers recovered from Nick's Bargain and Variety. *Id.* at 68-69, 72-76, 80-81.

**Mellinger burglary.** Following discovery of the Mackey burglary, Ranger Eitner and Ranger Sleighter checked on other weekend homes in the vicinity, one of which was owned by Glen Mellinger. The Mellinger home is about 75 yards back from the public road, and its drive is blocked by a yellow steel pipe gate with a padlock. On October 19, 2016, Ranger Eitner found the gate locked. On October 22, 2016, Ranger Sleighter observed that the gate

---

[2] Ranger Eitner was not able to photograph the table and chairs without being detected, and they were gone from the store by the time police arrived.

was closed, but on October 23, 2016, he noticed that the gate was open. He assumed that the Mellingers were at the cabin and did not go up to the home. *Id.* at 70-72, 116-118. The Mellingers actually had not been at the home since October 17, 2016 and did not return until October 26, 2016. *Id.* at 59-60.

At 10:10 a.m. on October 24, 2016, Appellant sold a Ryobi log splitter at Famous Pawn Brokers in Hagerstown, Maryland. Maryland law requires that persons selling or pawning property provide identification. Appellant used his driver's license as identification and signed a mandatory pawn form identifying the log splitter by serial number. *Id.* at 147-152; Com. Ex. 31 At 10:55 a.m., Appellant and Briggs visited a second pawnshop in Hagerstown, Washington Street Pawn Shop. Using his driver's license as identification, Appellant sold two firearms, one of which was a Marlin model 782, .22 WMR that was identified by serial number.[3] *Id.* at 156-164; Com. Ex. 32 and 33.

On October 26, 2016, Mellinger and his wife arrived at their home and discovered that the gate lock was missing. A window in the rear of their home had been forced open, and the entry door had been broken. Unlike Mackey's home, the Mellingers' door had a deadbolt that required a key to unlock it from either side. *Id.* at 60. The Mellingers discovered numerous items missing, including their Ryobi log splitter that had been inside the home and

_____

[3] The other firearm, a Remington model 700, .300 Win. Mag., belonged to Daniel Bland, the victim of the third burglary discussed below.

several firearms, including a Marlin model 782, .22 magnum—items that Appellant sold two days earlier. *Id.* at 62-64, 67.

**Bland burglary.** During the investigation of the burglary at the Mellinger residence on October 26, 2016, the State Police brought in Trooper Garner of the Forensic Services Unit to photograph the scene and dust for latent prints. The police also canvassed the area for additional burglaries and discovered a break-in at the home of Daniel Bland, where an intruder had forced open a window. Trooper Garner collected and photographed latent prints from the windows at the Mellinger and Bland homes. At each window were prints similar in appearance, but their source was not readily discernible. *Id.* at 91-94 (Mellinger), 96-98 (Bland); Com. Ex. 10, 13, 14, 15 (Mellinger), 20, 21 (Bland).

**Police investigation.** Ranger Sleighter observed Trooper Garner's work at the Bland cabin after dark as well as the latent prints that Trooper Garner photographed. Trooper Garner finished after darkness fell, and Ranger Sleighter departed the Bland cabin and proceeded to the Ranger station within Cowans Gap State Park. While en route, he noticed a minivan in one of the parking areas, which he found unusual because the park is closed after dark. He approached the van and discovered Briggs in the front passenger's seat and Appellant lying down in the back (the rear seat had been removed). Almost immediately, the ranger noticed a pair of Mechanix 0 work gloves between the front seats that had trademarks and texturing matching the latent prints he had seen at the Mellinger cabin earlier that day and at the

Bland home minutes before. He also observed within the van a camouflage ski mask, several tool boxes, a pair of bolt cutters and several hypodermic needles. Appellant explained that he was a drug user. The ranger photographed Appellant's driver's license and the gloves, but he did not believe he had sufficient evidence or legal authority to take Appellant into custody at that time. He did arrest Briggs because she had an outstanding warrant from a different county. *Id.* at 118-132; Com. Ex. 25, 26, 27, 28. Appellant's driver's license had the same address as the license that Appellant used at the pawnshops two days earlier.

On November 18, 2016, Trooper Bartlett interviewed Appellant concerning various burglaries in the Cowans Gap area. Appellant admitted that he assisted in two burglaries but claimed he did not personally enter the cabins. He claimed that he was the driver during both crimes and was driving his mother's minivan, the vehicle in which Ranger Sleighter discovered him and Briggs. Appellant claimed that an individual named Skipper entered the Mellinger home and handed the stolen items to Appellant, who put them in the van. Appellant admitted that the Mechanix 0 gloves belonged to him, and that he and Briggs were heroin addicts. *Id.* at 167-78.

**Trial, sentencing and this appeal.** The case proceeded to a jury trial, and the jury found Appellant guilty of multiple crimes relating to the three break-ins as well as weapons offenses. On February 6, 2018, the trial court sentenced Appellant to 21—75 years' imprisonment, which consisted of the following consecutive sentences: (1) at No. 201—2016, 30—180 months for

burglary of the Bland residence and 54—120 months for unlawful possession of the firearm he stole from this residence; (2) at No. 202—2016, 30—180 months for burglary of the Mackey residence, 24—180 months for conspiracy to burgle this residence, and 30—90 months for criminal mischief; and (3) at No. 206—2016, 30—120 months for burglary of the Mellinger residence and 54—120 months for unlawful possession of the firearm he stole from this residence. Appellant filed post-sentence motions challenging the weight of the evidence and the length of his sentence. The court denied these motions, and this appeal followed.[4] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues in this appeal:

1. Whether the Commonwealth's evidence was sufficient to prove that [Appellant] committed burglary or conspired to commit burglary of the [] Mackey cabin and that [Appellant] committed burglary of the [] Mellinger cabin?

2. Whether, in the alternative, the weight of the evidence was so weak and inconclusive such that no possibility of guilt should have been determined that [Appellant] committed the burglary or conspired to commit burglary of the [] Mackey cabin and that [Appellant] committed burglary of the [] Mellinger cabin?

_____

[4] Appellant originally filed a single notice of appeal at 920 MDA 2018 listing the captions of all three of his cases. Pursuant to **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), we quashed this appeal due to Appellant's failure to file separate notices of appeal at each docket number. Appellant filed a PCRA petition in the trial court seeking leave to file an appeal *nunc pro tunc*. The court granted this motion, and Appellant promptly filed separate notices of appeal at each docket number. Accordingly, we have jurisdiction over the present appeals.

3. Whether [Appellant]'s sentence, while being within the Sentencing Guidelines, should be modified as being unreasonable considering the circumstances of the case?

4. Whether the evidence discovered after the trial relating to Ranger Gregory S. Eitner, with DCNR, conduct and testimony in the case and trial was exculpatory?

Appellant's Brief at 10.

Appellant first challenges the sufficiency of the evidence underlying his convictions for burglarizing the Mackey and Mellinger cabins and his conspiracy conviction relating to the Mackey cabin.[5]  When reviewing a challenge to the sufficiency of the evidence, we determine "whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all the elements of the offense." *Commonwealth v. Cline*, 177 A.3d 922, 925 (Pa. Super. 2017).  "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Stokes*, 78 A.3d 644, 649 (Pa. Super. 2013).

The burglary statute provides in relevant part, "A person commits the offense of burglary if, with the intent to commit a crime therein, the person: . . . enters a building or occupied structure, or separately secured or occupied

_____

[5] Appellant does not challenge the sufficiency of the evidence underlying his burglary of the Bland residence.

- 8 -

portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present." 18 Pa.C.S.A. § 3502(a)(2). The conspiracy statute provides in relevant part that an individual is guilty of conspiracy to commit a crime if, "with the intent of promoting or facilitating its commission he . . . agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or . . . agrees to aid such other person or persons in the planning or commission of such crime." 18 Pa.C.S.A. § 903(a). Appellant concedes that the Mackey and Mellinger cabins are buildings adapted for overnight accommodation. Appellant's Brief at 17. He claims, however, that the only evidence of burglary and conspiracy was his statement to the state trooper that he was present at the scene of the burglaries, which he claims the trooper coerced by threatening to charge Briggs with the crimes if he did not confess to them.

Appellant's argument that his confession was coerced lacks merit, because when we review a sufficiency claim, we view all admitted evidence, even evidence that the defendant claims was improperly admitted. ***Commonwealth v. Haynes***, 116 A.3d 640, 656 (Pa. Super. 2015). Furthermore, Appellant's statement to the trooper was not the only evidence of burglary and conspiracy. The burglary of the Mellinger residence took place either on October 22, 2016 or October 23, 2016, between the time when Ranger Sleighter observed that the gate to the Mellinger residence was closed and when he observed that the gate was open. Several days later, on October

26, 2016, while investigating the Mellinger and Bland burglaries, Ranger Sleighter observed fingerprints at the Mellinger residence with distinctive texturing. Later that day, Ranger Sleighter discovered Appellant's vehicle in Cowans Gap State Park after dark, when the park was closed. As he looked inside the vehicle, he observed a pair of Mechanix 0 work gloves that had trademarks and texturing similar to the fingerprints at the Mellinger and Bland residences. He also observed items commonly used during burglaries—a camouflage ski mask, several tool boxes and a pair of bolt cutters. In addition, the Commonwealth established that Appellant visited multiple pawnshops in Maryland, where he sold a log splitter and firearm stolen from the Mellinger residence and several items stolen from the Mackey residence, including a dehumidifier. Viewed collectively and in the light most favorable to the Commonwealth, this evidence is sufficient to support Appellant's convictions for burglary of the Mackey and Mellinger residences and for conspiracy to burglarize the Mackey residence.

Next, Appellant challenges the weight of the evidence underlying his burglary and conspiracy convictions. The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015). A new trial is not warranted because of "a mere conflict in the testimony" and must have a stronger foundation than a reassessment of the credibility of witnesses. *Id.*

Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. *Id.* On appeal, "our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience." *Id.* Thus, "appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence." *Id.* An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice. *Id.*

Appellant complains that the verdict was against the weight of the evidence because his statement to the trooper was coerced and was the only evidence against him. We disagree. Even assuming that his statement was coerced, the evidence summarized above in response to his challenge to the sufficiency of the evidence demonstrates that there was considerable evidence against him besides his statement. Accordingly, this argument fails.

Next, Appellant, who was almost 38 years old on the date of sentencing, contends that the trial court abused its discretion by imposing a total maximum of 40 years' imprisonment for burglary and conspiracy in the Mackey case and burglary in the Mellinger case. The court ran this total consecutively to Appellant's other sentences to produce an aggregate maximum of 75 years' imprisonment, approximately 35 years longer than

Appellant's life expectancy.[6]  We agree with Appellant that the court imposed an excessive sentence.

Appellant asserts, and the Commonwealth does not dispute, the following facts.  Appellant had a prior record score of five, an offense gravity score of seven for the Mackey and Mellinger burglaries, and an offense gravity score of six for the Mackey conspiracy.  The standard range minimum sentence was 24—30 months' imprisonment for the burglary and 21—27 months' imprisonment for conspiracy.  Appellant's presentence investigation report ("PSI") recommended a sentence of 3-60 months on each burglary conviction and 27-54 months on the conspiracy conviction.

At sentencing, Appellant argued that he committed these offenses due to his opioid addiction and emphasized that none of them involved occupied residences or acts of violence.  The trial court stated perfunctorily that it reviewed the PSI and said it understood that Appellant's addiction to opioids was a contributing factor to his crimes.  N.T. 2/6/18, at 6, 8.  It concluded, however, that an "extended sentence" was necessary because Appellant

_____

[6] Pa.R.E. 201(b)(2) provides a court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned".  Pennsylvania's Standard Civil Jury Instructions refer to life expectancy tables prepared by the National Center for Health Statistics, U.S. Department of Health and Human Services ("DHS").  The 2017 DHS table states that a 35 year old white man has a life expectancy of another 43.4 years, and that a 40 year old white man has a life expectancy of another 38.8 years.  In accordance with Rule 201, we take judicial notice of this data.

violated the victims' sense of safety in their weekend homes and placed the victims' firearms in society illegally by selling them at pawnshops. *Id.* at 8-10. Appellant's minimum sentences for the Mackey and Mellinger burglaries (30 months each) and for the Mackey conspiracy (24 months) were within the standard range of the Sentencing Guidelines. The court imposed maximum sentences of 180 months for the Mackey and Mellinger burglaries, triple the PSI's recommendation of 60 months, and 120 months for conspiracy, more than double the PSI's recommendation of 54 months. The court ran these sentences consecutively to impose a total of 480 months' imprisonment—and it ran Appellant's sentences on other offenses consecutively to impose an aggregate of 75 years' imprisonment.

Appellant must satisfy four factors in order for this Court to consider this challenge to the discretionary aspects of his sentence. We must consider (1) whether he has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether he properly preserved the issue at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether Appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether he presents a substantial question that his sentence is not appropriate under the Sentencing Code, *see* 42 Pa.C.S.A. § 9781(b). ***Commonwealth v. Samuel***, 102 A.3d 1001, 1006-07 (Pa. Super. 2014). Substantial compliance with these requirements is sufficient. ***Commonwealth v. Wrecks***, 934 A.2d 1287, 1290 (Pa. Super. 2007). Appellant satisfied the first three factors by

filing a timely notice of appeal, challenging the length of his sentence in post-sentence motions and explaining in his brief why this Court should address his sentencing argument. With regard to the fourth factor, we have recognized "the imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Commonwealth v. Lamonda*, 52 A.3d 365, 372 (Pa. Super. 2012) (*en banc*). In our view, this case presents an "extreme circumstance," *id.*, due to the exceptional length of Appellant's aggregate maximum sentence for two break-ins of unoccupied weekend homes. Therefore, we will consider the merits of his claim.

"In reviewing a challenge to the discretionary aspects of sentencing, we evaluate the court's decision under an abuse of discretion standard." *Commonwealth v. Dodge*, 77 A.3d 1263, 1274 (Pa. Super. 2013). Additionally, "this Court's review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S.[A.] § 9781(c) and (d)." *Id.* Section 9781(c) reads:

> (c) Determination on appeal.—The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
>
> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S. § 9781(c). In reviewing the record, we consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d). In addition, "[w]hen imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S.[A.] § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant." *Commonwealth v. Coulverson*, 34 A.3d 135, 144 (Pa. Super. 2011).

"[T]he court has discretion to impose sentences consecutively or concurrently and, ordinarily, a challenge to this exercise of discretion does not raise a substantial question." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2006). "The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Id.* In recent years, we have tested the outer limits of these standards in multiple

- 15 -

cases. **See Commonwealth v. Dodge**, 77 A.3d 1263 (Pa. Super. 2013); **Coulverson**, **supra**.

In **Dodge**, the trial court imposed consecutive sentences totaling 58½—124 years' imprisonment on a 42-year-old defendant for forty counts of receiving stolen property that had limited financial impact, two counts of burglary, and five other offenses. We vacated this sentence on the ground that imposition of what essentially was a life sentence for nonviolent offenses with limited financial impact was clearly unreasonable. On remand, the trial court sentenced the defendant to 51 years, 4 months and 30 days to 122 years' imprisonment. Once again, we vacated this sentence as clearly unreasonable. At the next resentencing, the court imposed consecutive sentences that totaled 40 years and 7 months to 81 years and two months' imprisonment. We affirmed, reasoning that the sentence, while lengthy, did not amount to a life sentence. **Dodge**, 77 A.3d at 1276. We further observed that (1) the defendant was a career burglar whose prior record score of five did not adequately reflect his criminal past, (2) while the defendant's offenses involved unoccupied structures that posed less of a risk of violence than occupied structures, some risk still remains, (3) although the defendant mostly stole jewelry, he also stole firearms and items of sentimental value. **Id.** We also upheld the imposition of consecutive sentences because there were numerous victims. **Id.** at 1277.

- 16 -

In **Coulverson**, the court sentenced the defendant to an aggregate of 18—90 years' imprisonment following his guilty plea for rape, involuntary deviate sexual intercourse, robbery, and multiple other charges. Although the defendant's minimum sentences were within standard guideline ranges, we held that his aggregate sentence was "clearly unreasonable" under Section 9781(c)(2) due to the court's failure to take all criteria within Sections 9721(b) and 9781(d) into account. We reasoned:

> **[T]he record reveals scant consideration of anything other than victim impact and the court's impulse for retribution on the victims' behalf.** In so recognizing, we hasten to acknowledge that the victims in this case, particularly those stricken by the rape and its aftermath, are casualties of a social and personal tragedy that has profoundly altered the courses of their lives. Their losses are the product of brutal, senseless acts and anathema to individual dignity in an ordered society. **Nevertheless, those losses do not obviate the legal and social imperative that a defendant's punishment must fit not only the crime he committed, as reflected here in the impact statements of the victims at sentencing, but also must account for the rehabilitative need of the defendant, and the companion interest of society reflected in sections 9721(b) and 9781(d).**
>
> These needs are not served merely because the sentencing judge elects to commence a sentence in the standard range of the Sentencing Guidelines. Other factors too, including the term of the maximum sentence (regardless of the availability of statutory maximums or consecutive sentencing), also bear on the extent to which sentencing norms are observed and an appropriate sentence imposed. A sentence may still be excessive regardless of the commencement of terms of imprisonment in the standard guidelines range if the upper end of the sentence imposes a term unlikely to end during the defendant's natural life span or, as here, perpetually subject to the discretion of the Board of Probation and Parole.

**Id.** at 148 (emphasis added). We continued:

- 17 -

[T]he deliberation of a court of law demands evaluation of multiple considerations that private grief does not. Thus, **while a crime's impact on the victim continues to be a significant element of a sentencing judge's consideration, the court may not ignore the continuum of circumstances underlying a defendant's criminal conduct, society's need for rehabilitation,** or the statutory factors enunciated in our Sentencing Code on the way to imposing a maximum sentence. Nor may it aggregate consecutive sentences merely to achieve extended incarceration if the totality of the sentencing factors involved . . . has not been considered and acknowledged. In this regard, the trial court's consideration here was plainly inadequate, its explanation scant, and the resulting maximum sentence manifestly excessive . . . Although the court acknowledged the PSI report, it did so only as a perfunctory exercise and focused its consideration entirely on the severity of [the defendant's] offenses and the victims' impact statements. Its discussion evinced no consideration whatsoever of the dysfunction that marked [the defendant's] own life, his cooperation and remorse, his attempts at reclaiming a productive role in society, or the possibility that, with appropriate mental health treatment, he might succeed at rehabilitation after serving a substantial term of eighteen years' incarceration. The resulting sentence cannot be described as "individualized" in any meaningful way. Consequently, notwithstanding the commencement of [the defendant's] multiple sentences in the standard guidelines range, we find the maximum sentence imposed "clearly unreasonable."

*Id.* at 149-50 (emphasis added).

In our view, the 40 year maximum imposed for the Mackey and Mellinger offenses, in conjunction with Appellant's 35 additional years of maximum sentences, is clearly unreasonable for reasons analogous to *Coulverson*. As in *Coulverson*, the trial court stated cursorily that it reviewed the PSI but then imposed an exceptionally long sentence by paying scant attention to anything other than the impact of Appellant's burglaries on the victims. We understand that burglary and conspiracy are felonies, and

- 18 -

that it is important for homeowners to feel safe in their homes. Nevertheless, as in **Coulverson**, the court went astray by focusing on vindicating the victims' sense of safety without considering the gravity of Appellant's offenses, the totality of Appellant's background and criminal history, Appellant's rehabilitative needs, and whether appropriate mental health treatment or other programs in prison will assist his rehabilitation. Next, as in **Coulverson**, Appellant's minimum sentences fell within standard guideline ranges, but his sentences still may be excessive, because "the[ir] upper end[s] . . . impose[] a term unlikely to end during [his] natural life span or, as here, perpetually subject to the discretion of the Board of Probation and Parole." **Id.** at 148.

A comparison of the sentences in **Dodge** and the present case further illustrates the unreasonable nature of Appellant's sentences herein. While both **Dodge** and the present case involved thefts from unoccupied structures, the trial court meted out a total maximum sentence of forty years' imprisonment for the Mackey burglary and conspiracy and Bland burglary in this case, whereas the total maximum sentence for any three of the 47 offenses in **Dodge** was slightly over five years' imprisonment.[7]

Based on this analysis, we hold that Appellant's sentences on his burglary and conspiracy convictions in the Mackey and Mellinger cases are clearly unreasonable. Because resentencing on these convictions will upset

---

[7] In **Dodge**, the defendant was convicted of 47 offenses and received a total of 81 years and two months' imprisonment, or 1.73 years per offense.

the court's sentencing scheme, we will vacate all of Appellant's sentences and remand for resentencing on all convictions to give the trial court the opportunity to restructure its sentencing scheme. *Commonwealth v. Goldhammer*, 517 A.2d 1280, 1283–84 (Pa. 1986); *Commonwealth v. Williams*, 871 A.2d 254, 266 (Pa. Super. 2005) (if trial court errs in its sentence on one count in multi-count case, all sentences for all counts will be vacated so court can restructure its entire sentencing scheme).

Finally, Appellant raises a claim of newly discovered evidence, namely a photograph used in a prosecution against him for burglary in Huntingdon County. Appellant writes:

> Unbeknownst to Appellant, Ranger Eitner was also part of the Huntingdon County case. It is averred that evidence shown at trial, namely the photograph of the imprint of the glove taken at the Bland Cabin and believed to have been worn by [Appellant], was also provided as part of the discovery in [Appellant's] case in Huntingdon County and alleged to have come from the personal residence of Ranger Eitner's own personal residence. The photograph was the same picture used and testified to in the Fulton County case and was produced by Ranger Eitner in the Huntingdon County case from Ranger Eitner's own personal investigation into his own home. The Huntingdon County case was later closed without convictions.

Appellant's Brief at 14-15. Appellant contends that this photograph of the glove and its connection to Ranger Eitner is exculpatory and goes to the heart of the investigation against Appellant in Fulton County. *Id.* at 27-28.

We will not address this issue because Appellant admits that he did not raise it in post-sentence motions, Appellant's Pa.R.A.P. 1925 Statement, at ¶ 7, thus depriving the trial court of the opportunity to address this issue during

- 20 -

post-sentence proceedings. **See** Pa.R.Crim.P. 720(C) ("A post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery"); **see also** Comment, Pa.R.Crim.P. 720 (unlike ineffective counsel claims, Rule 720(C) requires that "any claim of after-discovered evidence must be raised promptly after its discovery. Accordingly, after-discovered evidence discovered during the post-sentence stage must be raised promptly with the trial judge at the post-sentence stage; after-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge; and after-discovered evidence discovered after completion of the direct appeal process should be raised in the context of the PCRA").

Convictions affirmed. Judgments of sentence vacated. Case remanded for resentencing on all convictions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/25/2020

- 21 -